1
2
3
4

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## Jan 23, 2023

SEAN F. McAVOY, CLERK

5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7    LATOYA B.,[1]

No. 1:21-cv-03086-MKD

8                        Plaintiff,

9            v.

10    KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL
11    SECURITY,[2]

12                        Defendant.

ORDER DENYING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

**ECF Nos. 16, 21**

13

14    [1] To protect the privacy of plaintiffs in social security cases, the undersigned

15    identifies them by only their first names and the initial of their last names.  *See*

16    LCivR 5.2(c).

17    [2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9,

18    2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo

19    Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.  No further

20    action need be taken to continue this suit.  *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 16, 21. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 16, and grants Defendant's motion, ECF No. 21.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

ORDER - 2

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.902(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id.*  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

ORDER - 3

substantial gainful work which exists in the national economy."  42 U.S.C. §

1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled.  20

C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to

step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is

not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §

416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

ORDER - 4

enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §

ORDER - 5

416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On March 18, 2015, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of March 1, 2013.  Tr. 80, 190-95. The application was denied initially, and on reconsideration.  Tr. 107-14, 119-24. Plaintiff appeared before an administrative law judge (ALJ) on March 10, 2017. Tr. 37-79.  On October 25, 2017, the ALJ denied Plaintiff's claim.  Tr. 12-31. Plaintiff appealed the denial, resulting in a remand.  Tr. 700-31.  Plaintiff appeared before an ALJ for a remand hearing on December 31, 2020.  Tr. 644-67.  On March 17, 2021, the ALJ again denied Plaintiff's claim.  Tr. 602-43.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 18, 2015.  Tr. 608.  At step

two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease, asthma, type two diabetes, obesity, major depressive disorder, post-traumatic stress disorder (PTSD), and a history of polysubstance abuse disorders with ongoing marijuana use. *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 609. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can occasionally climb ladders, ropes, or scaffolds and frequently climb ramps and stairs. She can frequently balance, stoop, crouch, kneel, and crawl. She must avoid concentrated exposure to excessive vibration, extreme cold, and wetness/humidity, and she must avoid even moderate exposure to pulmonary irritants. She can perform work with a GED reasoning level of four or less, only occasional interaction with the general public, only occasional changes in the work setting, and allowance for being off-task or unproductive up to ten percent of the workday.

Tr. 612.

At step four, the ALJ found Plaintiff is unable to perform any of her past relevant work. Tr. 632. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as mailroom clerk, outside deliverer, and housekeeper. Tr. 633. Therefore, the ALJ concluded Plaintiff was not under a

ORDER - 7

disability, as defined in the Social Security Act, from the date of the application through the date of the decision.  Tr. 634.

Per 20 C.F.R. § 416.1484, the ALJ's decision following this Court's prior remand became the Commissioner's final decision for purposes of judicial review

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

2.  Whether the ALJ properly evaluated the medical opinion evidence. ECF No. 16 at 2.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims.  ECF No. 16 at 3-17.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted).

ORDER - 8

1    "The claimant is not required to show that [the claimant's] impairment could

2    reasonably be expected to cause the severity of the symptom [the claimant] has

3    alleged; [the claimant] need only show that it could reasonably have caused some

4    degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

5    Second, "[i]f the claimant meets the first test and there is no evidence of

6    malingering, the ALJ can only reject the claimant's testimony about the severity of

7    the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

8    rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

9    omitted).  General findings are insufficient; rather, the ALJ must identify what

10    symptom claims are being discounted and what evidence undermines these claims.

11    *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v.*

12    *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

13    explain why it discounted claimant's symptom claims)).  "The clear and

14    convincing [evidence] standard is the most demanding required in Social Security

15    cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

16    *Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

17    Factors to be considered in evaluating the intensity, persistence, and limiting

18    effects of a claimant's symptoms include: 1) daily activities; 2) the location,

19    duration, frequency, and intensity of pain or other symptoms; 3) factors that

20    precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

416.929(c).  The ALJ is instructed to "consider all of the evidence in an

individual's record," to "determine how symptoms limit ability to perform work-

related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of her

symptoms were not entirely consistent with the evidence.  Tr. 613.

### 1. Inconsistent Objective Medical Evidence

The ALJ found that Plaintiff's symptom claims were not consistent with the

objective medical evidence.  Tr. 613-25.  An ALJ may not discredit a claimant's

symptom testimony and deny benefits solely because the degree of the symptoms

alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261

F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.

1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400

F.3d 676, 680 (9th Cir. 2005).  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

While Plaintiff alleged worsening of her back pain and associated symptoms, the ALJ noted later a 2016 MRI showed improvement in the disc bulges.  Tr. 614 (citing Tr. 489-90).  Plaintiff testified the improvement was due to being on bedrest, but the ALJ found there was no documentation of prescribed bedrest in the record and noted Plaintiff did not present in the records as someone who was bedridden with pain.  Tr. 614-15.  Plaintiff also generally had normal gait and ambulation, and while she had some abnormalities on examination, such as tenderness, she often had normal findings as well, such as normal reflexes, strength, range of motion, and negative straight leg raise testing.  Tr. 615 (citing, e.g., Tr. 284, 496, 499, 502, 561).

Plaintiff reported limitations due to her uncontrolled diabetes, but the ALJ found the records largely document normal findings and a lack of complications due to diabetes.  Tr. 617-18.  While Plaintiff had intermittent symptoms, including decreased sensation, findings generally were normal and the EMG/nerve conduction study did not document evidence of neuropathy, her diabetic foot

exams were normal, and she had no edema.  Tr. 618 (citing, e.g., 1125-31, 1163, 1171).

The ALJ noted that Plaintiff alleged her asthma requires her to use an inhaler every four hours.  Tr. 613.  As discussed in the prior order, Plaintiff also testified that her breathing was so impaired at times her lips and fingers "get a blue tinge." ECF No. 23 at 25.  However, Plaintiff's respiration has been largely normal throughout the relevant period and Plaintiff has not had treatment beyond medication refills.  Tr. 618-19.

The ALJ also found Plaintiff's allegations that she has chronic panic attacks and is homebound due to her depression are inconsistent with the medical records. Tr. 619.  The ALJ acknowledged that Plaintiff had more significant mental health symptoms during some periods, but she did not have any periods lasting 12 months or longer during which her mental health symptoms were disabling.  Tr. 622.  The medical records contain many normal mental status findings, including normal speech, behavior, eye contact, thought content, memory, mood, affect, attention, concentration, and there are many records where Plaintiff did not mention any mental health complaints.  *See, e.g.*, Tr. 355, 460, 619, 622-23, 1044, 1069.

Plaintiff offers an alternative interpretation of the evidence, and contends the objective evidence is consistent with her allegations, as the records demonstrate S1 nerve root abutment in 2016, and abnormal gait, range of motion, sensation,

reflexes, and other findings at times.  ECF No. 16 at 4 (citing, e.g., Tr. 370, 394, 493, 548).  However, the ALJ's interpretation of the objective evidence is reasonable and thus must be upheld.  *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision).  This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

### 2. Improvement with Treatment

The ALJ found Plaintiff's improvement with treatment was inconsistent with her allegations.  Tr. 615-16.  The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. § 416.913(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

First, the ALJ found Plaintiff's back impairment improved with treatment.  Tr. 615-16.  The medical records document Plaintiff's reported improvement in symptoms with the use of gabapentin.  *Id.* (citing, e.g., Tr. 498, 504).  Plaintiff also reported some improvement with physical therapy, although she also reported symptom exacerbation.  Tr. 616 (citing Tr. 370, 1242-47).  Plaintiff contends that even with treatment she had ongoing severe pain.  ECF No. 16 at 6-7 (citing Tr.

504, 599, 1244).  Despite Plaintiff's reported ongoing pain, she ambulated

unassisted, had limited hip range of motion but intact motor function, and normal

reflexes.  Tr. 504-05.  Although she reported her pain as a seven out of 10, Plaintiff

reported "gabapentin is helping a lot," and Plaintiff ambulated unassisted, had only

mild hip range of motion limitations, had normal strength, sensation, and gait, and

had tenderness and limited extension but normal full flexion in her lumbar range of

motion.  Tr. 599-600.  While Plaintiff cites to a November 2015 visit as evidence

she was in pain despite medication, Plaintiff reported at the visit that she had been

winterizing everything, lifting farm implements and "really aggravated her

symptoms."  Tr. 1244.  Plaintiff reported decreased pain with medication and

improved symptoms with physical therapy.  Tr. 283-84, 339, 370-71.

        While Plaintiff's diabetes has been uncontrolled, she has had some

improvement with treatment, as her blood sugar readings improved with insulin.

Tr. 617 (citing Tr. 459, 556).  Plaintiff reported chronic gastrointestinal issues,

attributed to her diabetes medications, however the records document only

sporadic treatment for the intermittent issue, and Plaintiff reported some

improvement in the symptoms with medication.  Tr. 618 (citing Tr. 482).  Plaintiff

also reported "really liking" Seroquel and reported improvement in her mental

health symptoms with medication.  Tr. 619 (citing Tr. 468).

ORDER - 14

1    The ALJ reasonably found Plaintiff's impairments were less severe with

2  treatment than Plaintiff alleged.  This was a clear and convincing reason, supported

3  by substantial evidence, to reject Plaintiff's symptom claims.

4      *3. Lack of Treatment*

5      The ALJ found Plaintiff's lack of treatment for some of her conditions was

6  inconsistent with her allegation of disabling limitations.  Tr. 617-18, 622.  An

7  unexplained, or inadequately explained, failure to seek treatment or follow a

8  prescribed course of treatment may be considered when evaluating the claimant's

9  subjective symptoms.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  And

10 evidence of a claimant's self-limitation and lack of motivation to seek treatment

11 are appropriate considerations in determining the credibility of a claimant's

12 subjective symptom reports.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir.

13 2001); *Bell-Shier v. Astrue*, 312 F. App'x 45, *3 (9th Cir. 2009) (unpublished

14 opinion) (considering why plaintiff was not seeking treatment).  When there is no

15 evidence suggesting that the failure to seek or participate in treatment is

16 attributable to a mental impairment rather than a personal preference, it is

17 reasonable for the ALJ to conclude that the level or frequency of treatment is

18 inconsistent with the alleged severity of complaints.  *Molina*, 674 F.3d at 1113-14.

19 But when the evidence suggests lack of mental health treatment is partly due to a

20 claimant's mental health condition, it may be inappropriate to consider a

1   claimant's lack of mental health treatment when evaluating the claimant's failure

2   to participate in treatment.  *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

3   Social Security Ruling 16-3p instructs that an ALJ "will not find an individual's

4   symptoms inconsistent with the evidence in the record on this basis without

5   considering possible reasons he or she may not comply with treatment or seek

6   treatment consistent with the degree of his or her complaints."  Social Security

7   Ruling (SSR) 16-3p at *8 (March 16, 2016), *available at* 2016 WL 1119029.

8        Although Plaintiff discussed non-surgical treatment for her back with her

9   provider, such as a TENS unit, Plaintiff did not follow up on obtaining a TENS

10  unit, nor did she pursue any other intervention.  Tr. 617 (citing Tr. 1044).  Plaintiff

11  sought minimal ongoing treatment for her back beyond medication refills.  Tr. 617.

12  Plaintiff was unable to pursue some of the treatment for her back due to her refusal

13  to discontinue marijuana use.  Tr. 312, 454-55, 614, 616.  Plaintiff also alleges she

14  has chronic gastrointestinal problems, but the ALJ noted Plaintiff had only

15  sporadic treatment for the symptoms and there is no documentation of any

16  particular treatment for her reported episodes of incontinence.  Tr. 618.  Plaintiff

17  also had gaps in her mental health treatment, including a gap from 2017 to 2018.

18  Tr. 622.

19       Plaintiff contends she sought adequate treatment, such as pointing to

20  treatment twice in 2014, once in 2015, and once in 2016 for her gastrointestinal

symptoms. ECF No. 16 at 10. Plaintiff also contends the ALJ erred in failing to consider her barriers to treatment, including her inability to afford a TENS unit, insurance issues, transportation limitations, and her difficulty leaving her home. ECF No. 16 at 7, 12 (citing Tr. 489, 1191). Any error in the ALJ's failure to consider Plaintiff's barriers to treatment is harmless, as the ALJ gave other supported reasons to reject Plaintiff's symptom claims. *See Molina,* 674 F.3d at 1115.

### 4. *Situational Stressors/Exacerbations*

The ALJ found some of Plaintiff's limitations were caused by temporary situational stressors or exacerbations. Tr. 615-23. If a claimant suffers from limitations that are transient and result from situational stressors, as opposed to resulting from a medical impairment, an ALJ may properly consider this fact in discounting Plaintiff's symptom claims. *See Chesler v. Colvin*, 649 F. App'x 631, 632 (9th Cir. 2016) (symptom testimony properly rejected in part because "the record support[ed] the ALJ's conclusion that [plaintiff's] mental health symptoms were situational"); *but see Bryant v. Astrue*, No. C12-5040-RSM-JPD, 2012 WL 5293018, at *5-7 (W.D. Wash. Sept. 24, 2012) (concluding Plaintiff's stressors appeared to have a constant presence affecting ability to work on a continuing basis, rather than temporary exacerbation).

ORDER - 17

1    The ALJ found that some of Plaintiff's physical symptoms were worsened

2  by temporary exacerbations caused by Plaintiff's activities.  Tr. 616-17 (citing Tr.

3  1178-1209).  Plaintiff's mental health symptoms also were tied to situational

4  stressors on multiple occasions.  Tr. 620 (citing Tr. 1026, 1033).  On one occasion,

5  Plaintiff reported her anxiety attack was related to housing stressors, Tr. 621

6  (citing Tr. 1096), and on another occasion, Plaintiff reported challenges because

7  she was about to lose her home and the provider assessed her with an acute stress

8  reaction, Tr. 621 (citing Tr. 1069).  While Plaintiff presented for emergency

9  treatment for anxiety/panic attacks during these stressors, the ALJ noted she did

10  not present for ongoing treatment of anxiety or panic attacks.  Tr. 621.  The ALJ

11  found Plaintiff reported only mild symptoms prior to mid-2016, when she endorsed

12  symptom aggravation from family situational stressors.  Tr. 622.

13    The ALJ also pointed to evidence that Plaintiff may have presented with

14  more significant symptoms on occasion due to substance use or medication-

15  seeking.  Tr. 622-23.  On one occasion, Plaintiff reported having used illicit drugs

16  immediately prior to seeking treatment, and another occasion a provider refused to

17  provide medication due to the appearance of impression management that

18  indicated she may be seeking benzodiazepine.  Tr. 622-23 (citing Tr. 1166-67,

19  1172).  These periods of exacerbated symptoms while under the influence or

20  seeking substances are not indicative of long-term limitations.

ORDER - 18

While Plaintiff contends she had ongoing symptoms not related to situational stressors, ECF No. 16 at 11-12, the ALJ reasonably found Plaintiff's symptoms were less severe than alleged during periods when she was not experiencing acute stressors/exacerbations.  This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

### 5.  Activities of Daily Living

The ALJ found Plaintiff's activities of daily living were inconsistent with her allegations.  Tr. 625.  The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13.  The ability to care for others without help has been considered an activity that may undermine claims of totally disabling pain.  *Rollins,* 261 F.3d at 857.  However, if the care activities are to serve as a basis for the ALJ to discredit the Plaintiff's symptom claims, the

record must identify the nature, scope, and duration of the care involved and this care must be "hands on" rather than a "one-off" care activity.  *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017).

Plaintiff reported winterizing her home, lifting farm implements, shoveling snow, exercising, and doing a lot of work around her house.  Tr. 615 (citing Tr. - 1242-47, 1047-49).  Plaintiff reported providing care for her child, including preparing meals, taking her to school, reading to her, coloring, and playing with her.  Tr. 625 (citing Tr. 355).  Plaintiff also stated she can do some household chores, garden, read novels, write poetry, and "helps out at the fire department" at "events that are typically crowded."  Tr. 355-56.  Plaintiff has reported being independent in her personal care and household chores and shopping.  Tr. 625 (citing Tr. 1155).  Plaintiff reported spending time with friends, going on walks three time per week, and communicating with friends by phone.  Tr. 619 (citing Tr. 319).  Plaintiff also reported camping in May 2015, traveling to Pittsburgh in November 2015, going on a road trip in January 2019, and going to the beach in June 2019.  Tr. 616 (citing Tr. 1044); Tr. 621 (citing Tr. 1100); Tr. 625 (citing Tr. 507, 581).  While Plaintiff reported some difficulties with some of her activities, the ALJ reasonably found these activities were inconsistent with Plaintiff's allegation that she is largely bedridden.

ORDER - 20

On this record, the ALJ gave clear and convincing reasons, supported by substantial evidence, to reject Plaintiff's symptom claims. Plaintiff is not entitled to remand on these grounds.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in his consideration of the opinions of Paul Emmans, D.O.; Debra Baylor, M.D.; Tasmyn Bowes, Psy.D.; and Thomas Genthe, Ph.D. ECF No. 16 at 17-24.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by

substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 1. Dr. Emmans

Dr. Emmans, a treating provider, rendered seven opinions on Plaintiff's functioning between 2011 and 2016. Tr. 301-02, 406-08, 412-23, 416-17, 421-22, 428-29, 449-50. In 2011, Dr. Emmans opined that Plaintiff was limited performing sedentary work 11 to 20 hours per week. Tr. 406-08. In April 2013, he opined Plaintiff was limited to sedentary work up to 10 hours per week. Tr. 412-13. In June 2013, he again opined Plaintiff was limited to sedentary work up to 10 hours per week. Tr. 428-29. In August 2013, he opined Plaintiff was limited to sedentary work with no limitation on hours. Tr. 416-17. In October 2013, he

ORDER - 22

1  opined Plaintiff was limited to sedentary work, but could work no hours per week.

2  Tr. 421-22.  In 2015, he opined Plaintiff was limited to 11 to 20 hours per week of

3  sedentary work, Tr. 301, but also opined Plaintiff was "severely limited," meaning

4  unable to lift at least two pounds or unable to stand or walk, Tr. 302.  In 2016, Dr.

5  Emmans opined Plaintiff was limited to one to 10 hours of sedentary work per

6  week.  Tr. 449-50.  The ALJ gave no weight to the opinions Dr. Emmans rendered

7  prior to 2014 and gave limited weight to the later opinions.  Tr. 626-27.  Plaintiff

8  does not challenge the ALJ's rejection of the 2011 nor the August 2013 opinion,

9  but contends the ALJ erred in his rejection of the other five opinions.  ECF No. 16

10  at 18-20.

11      First, the ALJ found the opinions rendered in 2013 did not establish

12  continuity of her limitations during the relevant adjudicative period.  Tr. 626.

13  Evidence from outside the relevant period in a case is of limited relevance.

14  *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1165; *see also Fair*, 885 F.2d at

15  597.  The Ninth Circuit, however, has held that the ALJ is required to consider "all

16  medical opinion evidence."  *Tommasetti*, 533 F.3d at 1041 (citing 20 C.F.R. §

17  404.1527(b)); 20 C.F.R. § 416.927.  The ALJ considered the opinions that predated

18  the alleged onset, and reasonably found the opinions failed to establish Plaintiff

19  had an ongoing disability.  The October 2013 opinion listed only uncontrolled

20  diabetes and depression exacerbation as the diagnoses, and indicated the

ORDER - 23

1    limitations were expected to last six months or longer.  Tr. 421-22.  The February

2    2015 opinion listed back pain, anxiety, and diabetes as diagnoses.  Tr. 301.  There

3    is an over one-year gap between the two opinions, and they do not demonstrate that

4    any condition besides diabetes continued to impact Plaintiff's functioning for the

5    entire time period.  This was a specific and legitimate reason, supported by

6    substantial evidence, to reject Dr. Emmans' early opinions.

7         Next, the ALJ found all the opinions were not well supported.  Tr. 627.  The

8    Social Security regulations "give more weight to opinions that are explained than

9    to those that are not."  *Holohan*, 246 F.3d at 1202.  "[T]he ALJ need not accept the

10   opinion of any physician, including a treating physician, if that opinion is brief,

11   conclusory and inadequately supported by clinical findings."  *Bray*, 554 at 1228.

12   The ALJ noted Dr. Emmans did not specify which specific limitations were caused

13   by Plaintiff's diabetes, anxiety, or back impairment.  Tr. 627.  Dr. Emmans did not

14   provide objective support for his opinion Plaintiff is limited to only part-time work

15   nor the limitation to sedentary work.  *Id.*  For example, in the October 2013

16   opinion, Dr. Emmans opined Plaintiff cannot lift even two pounds or is unable to

17   stand or walk, and she was unable to participate in any work activities, Tr. 421-22,

18   yet Dr. Emmans only listed diabetes and depression exacerbation as Plaintiff's

19   diagnoses.  Dr. Emmans did not set forth any explanation as to how diabetes and

20   depression prevents Plaintiff from standing, walking, or lifting two pounds.

At the examinations where Dr. Emmans rendered the opinions, he performed limited physical examinations and his records do not document objective findings to support his opinion.  Tr. 627.  Plaintiff contends Dr. Emmans' opinion is supported by the objective evidence in his records and the ALJ failed to point to records that demonstrate the opinion is not supported.  ECF No. 16 at 18-19.

The ALJ cited to two records that were not visits with Dr. Emmans, Tr. 627 (citing Tr. 311, 334).  However, the records contain many visits where Dr. Emmans' documented largely normal examination findings.  At a February 2015 visit, Plaintiff had a normal examination.  Tr. 312.  At the May 2014 visit where Dr. Emmans completed the disability paperwork, Dr. Emmans documented Plaintiff's reported symptoms in the record but there is no documentation he completed an examination.  Tr. 338.  At the May 2016 appointment where Dr. Emmans completed disability paperwork, Plaintiff was tearful and discussed multiple situational stressors she was experiencing, but she had normal orientation and no noted physical abnormalities.  Tr. 456-57.  Dr. Emmans noted Plaintiff was seeing Waters Edge for her back pain, and he did not conduct a full physical examination.  *Id.*

While Plaintiff offers an alternative interpretation of Dr. Emmans' opinions and his medical record, the ALJ's interpretation is reasonable.  The Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's

interpretation of the record.  *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision).  This was a specific and legitimate reason, supported by substantial evidence, to reject Dr. Emmans' opinions.

Next, the ALJ found the opinions were inconsistent with the record as a whole.  Tr. 627.  An ALJ may discredit physicians' opinions that are unsupported by the record as a whole.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  The ALJ found Dr. Emmans' opinions were inconsistent with Plaintiff's improvement with treatment, and the other medical records that document Plaintiff's normal mobility, strength, reflexes, alertness, understanding, mood, affect, and cognition.  Tr. 626-27.  As discussed *supra,* while there are abnormalities in the record, the objective medical evidence documents some improvement with treatment, and documents many normal mental status and physical findings that are not consistent with a finding of disability.  The ALJ gave was a specific and legitimate reason, supported by substantial evidence to reject Dr. Emmans' opinions.

## 2.  Dr. Baylor

On June 23, 2019, Dr. Baylor, a State agency medical consultant, rendered an opinion on Plaintiff's functioning.  Tr. 747-79.  Dr. Baylor opined Plaintiff can occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk six

hours, sit six hours; frequently balance and kneel; occ and occasionally climb

ramps/stairs and ladders/ropes/scaffolds, and stoop, crouch, and crawl; and she

should avoid concentrated exposure to fumes, odors, dusts, gases, and poor

ventilation.  Tr. 748-49.  The ALJ gave Dr. Baylor's opinion significant weight.

Tr. 627.

Plaintiff contends the ALJ erred in giving weight to Dr. Baylor's opinion

over Dr. Emmans' opinions and failing to consider that Dr. Baylor only assessed

Plaintiff's functioning from March 2019 onward.  ECF No. 16 at 20.  The opinion

of a nonexamining physician may serve as substantial evidence if it is supported by

other evidence in the record and is consistent with it.  *Andrews*, 53 F.3d at 1041.

Other cases have upheld the rejection of an examining or treating physician based

in part on the testimony of a non-examining medical advisor when other reasons to

reject the opinions of examining and treating physicians exist independent of the

non-examining doctor's opinion.  *Lester*, 81 F.3d at 831 (citing *Magallanes v.*

*Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989).

The ALJ gave supported reasons to reject Dr. Emmans' opinions, as

discussed *supra*.  The ALJ also considered the fact that Dr. Baylor did not have

access to the entire record and considered that both earlier and later evidence

impacted the final RFC.  Tr. 627-28.  The ALJ considered the consistency of Dr.

Baylor's opinion with the medical record as a whole.  *Id.*  The ALJ did not error in giving weight to Dr. Baylor's opinion.

### 3.  Dr. Bowes

On May 24, 2019, Dr. Bowes conducted a psychological examination and rendered an opinion on Plaintiff's functioning.  Tr. 1057-62.  Dr. Bowes diagnosed Plaintiff with PTSD; panic disorder; persistent depressive disorder, currently severe major depression; methamphetamine use disorder and opiate use in sustained reported remission; and rule out borderline personality disorder.  Tr. 1060.  Dr. Bowes opined Plaintiff has no to mild limitation in her ability to be aware of normal hazards and take appropriate precautions; moderate limitations in her ability to understand, remember, and persist in tasks by following very short and simple instructions, learn new tasks, perform routine tasks without special supervision, make simple work-related decisions, and ask simple questions or request assistance; marked limitations in her ability to adapt to changes in a routine work setting, communicate and perform effectively in a work setting, and set realistic goals and plan independently; and severe limitations in her ability to understand, remember, and persist in tasks by following detailed instructions, perform activities within customary tolerances without special supervision, maintain appropriate behavior in a work setting, and complete a normal workday/workweek without interruptions from psychologically-based symptoms.

Tr. 1060.  She opined Plaintiff's impairments overall have a severe rating, and the limitations were likely to last 18 or more months with treatment.  Tr. 1060-61.  The ALJ gave little weight to Dr. Bowes' opinion.  Tr. 630.

First, the ALJ found Dr. Bowes' opinion was not supported by her examination.  Tr. 630.  A medical opinion may be rejected if it is unsupported by medical findings.  *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  Furthermore, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes.  *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).  While Dr. Bowes opined Plaintiff had multiple moderate, marked, and severe limitations, her notes do not document objective memory testing, nor typical concentration tests like completing a three-step command or making change.  Tr. 630, 1059-61.  Plaintiff's eye contact, speech, attitude, thoughts, orientation, perception, fund of knowledge, insight/judgment, and perception were all normal.  Tr. 1061-62.  Plaintiff had a dysphoric mood, labile affect, abnormal trails testing results, and "gaps in long term memory."  Tr. 1059-61.  Despite Plaintiff having normal speech and communication, Dr. Bowes opined Plaintiff had limitations in communicating and asking questions.  Tr. 1060-61.  The ALJ reasonably found Dr. Bowes' opinion

ORDER - 29

was not supported by her examination.  This was a specific and legitimate reason, supported by substantial evidence, to reject Dr. Bowes' opinion.

Second, the ALJ found Dr. Bowes' opinion appeared to rely too heavily on Plaintiff's self-report. Tr. 630.  A physician's opinion may be rejected if it is too heavily based on a claimant's properly discounted complaints. *Tonapetyan*, 242 F.3d at 1149.  As discussed *supra,* Dr. Bowes' opinion was not supported by objective evidence in her examination.  Thus, the ALJ found the opinion appeared to rely too heavily on Plaintiff's self-report.  As the ALJ gave supported reasons to reject Plaintiff's symptom claims, the ALJ reasonably rejected Dr. Bowes' opinion as too heavily relying on Plaintiff's unreliable self-report.  This was a specific and legitimate reason, supported by substantial evidence, to reject Dr. Bowes' opinion.

Third, the ALJ found Dr. Bowes based her opinion on an incomplete record, as she was unfamiliar with much of the evidence in the medical record.  Tr. 630. The extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion.  *See* 20 C.F.R. § 416.927(c)(6).  Dr. Bowes did not have access to additional records, and thus was unaware that the emergency department visits Plaintiff described to her were not frequent occurrences in her longitudinal record, and that her reported more severe symptoms were repeatedly tied to situational stressors.  Tr. 630.  Dr. Bowes also did not have access to records demonstrating

ORDER - 30

Plaintiff's ability to leave her home, go on trips, and engage in other activities.  *Id.*

The ALJ gave specific and legitimate reasons, supported by substantial evidence,

to reject Dr. Bowes' opinion.

### 4. Dr. Genthe

On June 2, 2020, Dr. Genthe examined Plaintiff and rendered an opinion on

her psychological functioning.  Tr. 1155-62.  Dr. Genthe diagnosed Plaintiff with

bipolar II disorder with anxious distress; PTSD; ADHD, combined presentation;

other specified personality disorder (with borderline features); cannabis use

disorder, in sustained remission; stimulant use disorder (methamphetamines), in

sustained remission; and heroin use disorder, in sustained remission.  Tr. 1158.  Dr.

Genthe opined Plaintiff had no to mild limitations in understanding, remembering,

and persisting in tasks by following very short and simple instructions, and make

simple work-related decision; moderate limitations in her ability to perform

activities within a schedule, maintain regular attendance, and be punctual within

customary tolerance without special supervision, perform routine tasks without

special supervision, be aware of normal hazards and take appropriate precautions,

and ask simple questions or request assistance; and marked limitations in her

ability to understand, remember, and persist in tasks by following detailed

instructions, learn new tasks, adapt to changes in a routine work setting,

communicate and perform effectively in a work setting, maintain appropriate

ORDER - 31

1 behavior in a work setting, complete a normal workday/workweek without

2 interruptions from psychologically based symptoms, and set realistic goals and

3 plans independently.  Tr. 1158-59.  She further opined Plaintiff's limitations

4 overall are marked in severity and would last 12 months or longer with treatment.

5 Tr. 1159.  The ALJ gave Dr. Genthe's opinion little weight.  Tr. 629.

6     First, the ALJ found Dr. Genthe's opinion was not supported by his largely

7 benign examination findings.  Tr. 631.  A medical opinion may be rejected if it is

8 unsupported by medical findings.  *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at

9 1195; *Thomas*, 278 F.3d at 957; *Tonapetyan*, 242 F.3d at 1149; *Matney*, 981 F.2d

10 at 1019.  Furthermore, a physician's opinion may be rejected if it is unsupported by

11 the physician's treatment notes.  *Connett*, 340 F.3d at 875 (9th Cir. 2003).  While

12 Dr. Genthe opined Plaintiff has multiple moderate and marked limitations, his

13 examination demonstrated that Plaintiff had a generally normal thought process,

14 concentration, memory, behavior, thought content, perception, abstraction, and

15 insight and judgment.  Tr. 631, 1160-61.  The ALJ reasonably found Dr. Genthe's

16 opinion was not supported by the largely normal mental status findings.  This was

17 a specific and legitimate reason, supported by substantial evidence, to reject Dr.

18 Genthe's opinion.

19     Second, the ALJ found Dr. Genthe relied too heavily on Plaintiff's self-

20 report.  Tr. 631.  A physician's opinion may be rejected if it is too heavily based on

ORDER - 32

a claimant's properly discounted complaints.  *Tonapetyan*, 242 F.3d at 1149.  As discussed *supra,* Dr. Genthe's examination contained little objective evidence to support his opinion.  He did not review any outside records.  Tr. 631.  The ALJ also noted that because the examination was conducted by phone, Dr. Genthe lacked the ability to personally observe Plaintiff, such as observing whether she appeared to be under the influence of any substances.  *Id.*  The ALJ reasonably found Dr. Genthe relied too heavily on Plaintiff's self-report.  This was a specific and legitimate reason, supported by substantial evidence, to reject Dr. Genthe's opinion.

Third, the ALJ found Dr. Genthe based his opinion on an incomplete record, as he was unfamiliar with much of the evidence in the medical record.  Tr. 631.  The extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion.  *See* 20 C.F.R. § 416.927(c)(6).  Plaintiff told Dr. Genthe she had not used substances for years, but she was treated the day after the examination for fentanyl use.  Tr. 631.  Dr. Genthe also did not have access to Plaintiff's other mental health treatment records, which the ALJ noted documented multiple other diagnoses but no one had ever diagnosed ADHD before besides Dr. Genthe.  *Id.*  This was a specific and legitimate reason, supported by substantial evidence, to reject Dr. Genthe's opinion.  Plaintiff is not entitled to remand on these grounds.

ORDER - 33

# CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 21**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED January 23, 2023.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 34